UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHRISTOPHER M. MURPHY, on Behalf of
Himself and All Other Employees of Labor
Ready, Inc., and Labor Ready Northeast, Inc.,
and Former Employees, and/or Aggrieved by
Labor Ready Properties, Inc., in the State of
New York, Similarly Situated,

Plaintiff

vs.

LABOR READY, INC., LABOR READY
NORTHEAST, INC. and LABOR READY
PROPERTIES, INC., Individually, Jointly
and Severally,

Defendants
------------------------------------------------------------X

**COMPLAINT**

Case Number: 06 CV6 461T (Fe)

The Plaintiff, Christopher M. Murphy, complaining of the Defendants above-named, as and for his Complaint, respectfully alleges and shows to this Court as follows:

## INTRODUCTORY STATEMENT & NATURE OF THE ACTION

(1) This is an action on behalf of the representative Plaintiff above named and on behalf of others similarly situated to recover unpaid wages and unlawful deductions from wages, pursuant to the Fair Labor and Standards Act (29 U.S.C. § 201 *et seq.*), to obtain injunctive, declaratory and/or other equitable and/or affirmative relief, seeking to enjoin, prohibit and restrain the Defendants from continuing to engage in the practices

-1-

hereinafter set forth, which violate state and federal statutory law.  Parallel, similar or

related claims and causes of action are also stated herein, pursuant to New York Labor

Law §§ 193, 198, 218 and 663 are also stated herein, under the pendent jurisdiction of

this Court, as hereinafter more fully set forth.

## JURISDICTION & VENUE

(2) The jurisdiction of this Court is hereby invoked pursuant to 28 U.S.C. § 1331,

28 U.S.C. § 1355 and 29 U.S.C. § 201 *et seq*.  This action is brought as a putative class

action, authorized under 28 U.S.C. § 216(b).  Class action certification will be timely re-

quested, pursuant to Fed.R.Civ.Pr., Rule 23.

(3) In personam jurisdiction over the three Defendants above named is based up-

on the fact that these entities maintain regular offices for the transaction of business in

the State of New York, regularly do, transact and solicit business in this State and derive

substantial revenue from such business and operations.

(4) Venue arises under 28 U.S.C. § 1391(b)(, (c), based upon the fact that the

Defendants operate and maintain an office for the regular transaction of business in the

County of Chemung, within the Western District of New York, and the further fact that

"..a substantial part of the events or omissions giving rise to the claim occurred" within

this federal Judicial District.

## THE PARTIES

(5) At all times hereinafter mentioned, the Plaintiff, Christopher M. Murphy, was, and he now is, a resident of the City of Elmira, County of Chemung and State of New York.

(6) Upon information and belief, at all times hereinafter mentioned, the Defendant Labor Ready, Inc., was, and it now is, a business corporation, duly organized and existing under and by virtue of the laws of the State of Washington, with its main office(s) and principal place of business located in the City of Tacoma and State of Washington.

(7) Upon information and belief, at all times hereinafter mentioned, the Defendant Labor Ready Northeast, Inc., was, and it now is, a business corporation, duly organized and existing under and by virtue of the laws of the State of Washington, with its main office(s) and principal place of business located in the City of Tacoma and State of Washington, and is one of ten (10) regional operating subsidiaries of Defendant Labor Ready, Inc.

(8) Upon information and belief, at all times hereinafter mentioned, the Defendant Labor Ready Northeast, Inc., was, and it now is, a temporary employment firm that operates in twelve (12) states in northeastern United States (to wit, Connecticut, Delaware, District of Columbia, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island and Vermont).

(9) Upon information and belief, at all times hereinafter mentioned, Defendant Labor Ready, Inc., and/or Defendant Labor Ready Northeast, Inc., owned and/or operated, and they now operate, twenty-six (26) branches within the State of New York, including branches in Elmira (one branch), Syracuse (two branches), Binghamton (two branches), Buffalo (two branches) and Niagra Falls (one branch).

(10) Upon information and belief, Labor Ready Northeast, inc., is one of eleven (11) such regional operating divisions of parent company Labor Ready, Inc., which, collectively, operate some Seven Hundred (700) Labor ready branches in the United States.

(11) Upon information and belief, Defendant Labor Ready, Inc., also operates Labor Ready branches in Canada, Puerto Rico and Great Britain and has approximately Seven Hundred Thousand (700,000) temporary employees all told.

(12) Upon information and belief, at all times hereinafter mentioned, Defendants Defendants Labor Ready, Inc., and Labor Ready Northeast, Inc., were, and they now are, principally engaged in the business of supplying temporary unskilled and semiskilled workers to perform manual labor for its approximately 7,000 customers in the State of New York.

(13) Upon information and belief, at all times hereinafter mentioned, Defendant Labor Ready Properties, Inc., was, and it now is, a business corporation, duly organized and existing under and by virtue of the laws of the State of Washington, with its main office(s) and principal place of business located in the City of Tacoma and State of Washington.

(14) Upon information and belief, at all times hereinafter mentioned, Defendant Labor Ready Properties, Inc., was, and it now is, an operating subsidiary of Defendant Labor Ready, Inc., yet, upon information and belief, that corporate entity employs no temporary workers.

(15) Upon information and belief, at all times hereinafter mentioned Defendant Labor Ready Properties, Inc., was, and it now is, the Lessee and Operator of certain Cash Dispensing Machines (hereinafter, "C.D.M.")s) located in all Labor Ready, Inc., and/or Labor Ready Northeast, Inc., branches in the State of New York.

(16) Upon information and belief, at all times hereinafter mentioned, these C.D.M..'s were, and they now are, leased by and to Labor Ready Properties, Inc.,

(17) Upon information and belief, at all times hereinafter mentioned,  Defendant Labor Ready Properties, Inc., operates and maintains, or contracts to operate and maintain, these C.D.M.'s.

(19) Upon information and belief, Defendant Labor Ready Properties, Inc., derived, and it now derives, substantial revenues from the operation of these C.D.M.'s, by charging Labor Ready employees substantial fees for using them to obtain their daily and/or weekly wages in cash.

(20) Upon information ane belief, Labor Ready, Inc., Labor Ready Northeast, Inc. and/or Labor Ready Properties, Inc., obtained and garnered approximately $8.3 million dollars in revenue from the operation of the C.D.M.s located in Labor Ready branch offices in the year 2000 - the last year that any of the three Defendants publicly reported

such revenues.

(21) Upon information and belief, the Defendants Labor Ready, Inc., and/or Labor Ready Northeast, Inc., were at all times hereinafter mentioned, and they now are, "employers," as defined by and under New York Labor Law § 190(3) and § 651(3), as well as 29 U.S.C. § 203(g).

(22) Upon information and belief, Murphy and the other Labor Ready temporary employees comprising the class herein embraced were at all times hereinafter mentioned, and they now are, "employees," as defined by and under New York Labor Law § 190(2) and § 651(5), as well as 29 U.S.C. § 203(g).

(23) Defendants Labor Ready, Inc., Labor Ready Northeast, Inc., and Labor Ready Properties, Inc., will be hereinafter collectively referred to as "Labor Ready."

## THE FACTS

(24) Plaintiff (hereinafter "Murphy") was employed by Labor Ready from on or about January 1, 2006 through and including on or about June 1, 2006.

(25) The other members of the putative class (hereinafter simply "the class") are also past and/or present employees of Labor Ready, working at or through one or more of its twenty-six (26) branches within the State of New York.

(26) At all times hereinafter mentioned, Labor Ready agreed to pay Murphy and other employees similarly situated, the statutory minimum wage, presently fixed at $6.75 per hour, under the New York Minimum Wage Act, Labor Law § 650 *et seq.*,

and the federal Fair Labor Standards Act (29 U.S.C. §§ 201 *et seq.*)

(27) At all times hereinafter mentioned, Murphy and other employees hereinafter mentioned did, in fact, perform such services and work at the behest of Labor Ready and on behalf of Labor Ready, and they did so in a satisfactory fashion, thus entitling them to the wages and compensation alluded to above.

(28) During the period of his and their employ by and at Labor Ready, Murphy and the other class members herein specified typically reported to Labor Ready offices at the beginning and end of each daily work shift for job assignments.

(29) In its advertising and promotion, Labor Ready touts the slogan, "work today, get paid today" - and, upon information and belief, this is a very strong attraction and incentive for its temporary workers - to wit, getting paid on a daily basis for work performed that same day.

(30) Labor Ready offers its temporary employees the option of payment for earnings by check or by "cash voucher."

(31) In the Elmira branch of Labor Ready (located in the County of Chemung), all paychecks issues to temporary employees are drawn on the Fleet Bank - and there is no local branch of Fleet Bank in the Elmira or Chemung County areas or their environs.

(32) Moreover, the only place to cash Labor Ready paychecks (for employees who do not have their own checking or savings account [upon information and belief, the substantial majority of class members herein]), is at P & C Markets - which has

two (2) markets in Chemung County, both of which are at least approximately two (2) miles from the Labor Ready branch located on South Main Street in the City of Elmira.[1]

(33) Owing to the difficulties of cashing any Labor Ready paycheck(s), upon information and belief, the vast majority of Labor Ready temporary employees elect to be paid by "cash vouchers."

(34) Under this method of payment, employees are issued a paper "voucher," which they can, in turn, use to secure their wages in cash, using a "cash dispensing machine" (hereinafter "CDM"), which is similar to the familiar automated teller machine (or "ATM").

(35) Using this "voucher," employees key in a 12-digit number from the face of the voucher itself at the machine and are thus able to receive their cash wages, minus several deductions - which are, as hereinafter set forth unlawful under state and/or federal statutory provisions.

(36) These deductions include a "processing fee" of One ($1.00) Dollar per each CDM transaction, plus all change owed to the employee is deducted by the machine.[2] Thus, the deductions range from $1.00 to $1.99, ostensibly or presumably averaging $1.50.

---

[1] Upon information and belief, the vast majority of Labor Ready employees do not have a car, truck or other vehicle.

[2] Thus, for example, if an employee's voucher was in the sum of $36.71, the use of the voucher system and the CDM would result in the deduction from his or her daily wages of the One ($1.00) Dollar transaction fee, plus the 71 cents involved, so he or she would ultimately receive only $35.00, rather than the $36.71 face amount of the voucher.

(37) As aforesaid, upon information and belief, all of the CDM machines herein referred to are leased by or to, operated and maintained by Defendant Labor Ready Properties, Inc., exclusively and they are placed and situated by said Defendant solely in Labor Ready branch offices.

(38) Upon information and belief, the sole function and purpose of these CDM machines is to distribute pay and wages to Labor Ready's temporary employees, such as the class members in this lawsuit.

(39) Upon information and belief, Labor Ready began using the CDM machines and voucher system in all of its branch offices in the United States and Puerto Rico, at the very least, and may well use the same or similar arrangements in its international offices.

(40) Inasmuch as almost all Labor Ready employees were paid by Labor Ready on a daily, as opposed to weekly or biweekly, basis, the use of the C.D.M. would typically cost such employees Ten ($10.00) Dollars or more per week, depending upon the frequency of their work for Labor Ready.

(41) Most vouchers are for less than $50.00, in that most Labor Ready employees were and are paid on a daily, as opposed to weekly or biweekly basis, so fees deducted from their wages constitute a relatively large portion of their daily wages or pay, upon information and belief, approximately four to six (4% to 6%) percent thereof.

(42) Upon information and belief, Labor Reday began using the "voucher" arrangement or system, in conjunction with the CDM's, in all of its branches in the Uni-

ted States and Puerto Rico, in or about 1998.

(43) According to its 10K filings with the United States Securities and Exchange Commission, its approximately $851 million dollars in revenues nationwide in 1999 included $7.7 million in fees acquired by the use of the vouchers and CDM's.  In 2000 - upon information and belief, the last year that Labor Ready reported such figures, that sum had increased to $8.3 million.

(44) Upon information and belief, monies directly generated by the use of the voucher arrangement and CDM's generated a substantial portion of Labor Ready's net annual income - quite possibly well in excess of twenty (20%) percent thereof.

(45) Upon information and belief, Labor Ready's temporary employees often arrive at or soon after 5:30 A.M., at which time Labor Ready branches typically open, and often arrive back at such branches to get paid after 5:00 P.M. (most branches being open until 6:00 P.M. or later).

(46) Upon information and belief, no Labor Ready temporary employee is ever paid or compensated for time spent at Labor Ready offices before and after his or her hours of actual work or presence at the job site itself.

(47) Upon information and belief, no Labor Ready temporary employee is ever paid or compensated for time spent en route to and from the job site.

(48) Upon information and belief, no Labor Ready temporary employee is ever paid or compensated for time spent in training courses, which such courses are almost invariably required as a condition of working for Labor Ready.

-10-

(49) Upon information and belief, the vast majority of Labor Ready temporary employees do not own or have access to a vehicle, so they are required to obtain rides and transportation to and from the worksite in vehicles operated by fellow Labor Ready temporary employees.  In such cases, Labor Ready requires the temporary employee(s) obtaining such rides and transportation to pay a fixed fee (approximately Three [$3.00] Dollars) to the employee operating the vehicle.

(50) Upon information and belief, each temporary employee obtaining such ride or transportation is required to pay this fee, notwithstanding the number of other such individuals obtaining such ride or transportation and notwithstanding the fact that the distance involved may be very short - such as a mile or two.

(51) Upon information and belief, Labor Ready branches enforce such payment system for rides and transportation, rather than leaving it to informal arrangement or agreement by or between the temporary employees involved - i.e., those who operate the vehicle(s) and those who obtain the rides and transportation from them.

(52) Upon information and belief, Labor Ready temporary employees are often required and compelled to pay Labor Ready for the use or purchase of necessary safety equipment or other equipment or materials required as a condition precedent to working for Labor Ready.

(53) Upon information and belief, Labor Ready temporary employees whose Labor Ready-supplied safety or other equipment is damaged or destroyed in any way or for any reason, including for reasons wholly beyond their control, are required and compel-

led to compensate Labor Ready for such damage or destruction of equipment.

(54) Upon information and belief, it is standard and accepted by Labor Ready temporary employees that they complain about any or all of the foregoing matters, burdens, costs, problems, etc., at their own peril, in that raising any such complaint or protest about such matters or anything else will, all too often, preclude such individuals from being assigned jobs or work.

(55) Upon information and belief, Labor Ready temporary employees who are not assigned to a job site or position on any given day, and who nonetheless wait around Labor Ready branch offices in the hopes of getting such work or assignment that day, are never compensated for such waiting time.

### AS AND FOR A FIRST CAUSE OF ACTION UNDER THE FAIR LABOR STANDARDS ACT (29 U.S.C. § 201 *et seq.*)

(56) Restates and realleges each and every allegation hereinbefore set forth in ¶ "1" through ¶ "55" inclusive, as though set forth in full herein and with the same force and effect.

(57) Upon information and belief, at all times hereinafter, Murphy and his fellow class members were, and they now are,  "..engaged in commerce or in the production of goods for commerce, or [were] [are] employed in an enterprise engaged in commerce or in the production of goods for commerce,..." as set forth, defined and contemplated by and under the Fair Labor Standards Act and, more particularly, 29 U.S.C. § 207(a)(1).

-12-

(58) Upon information and belief, in numerous instances and as to numerous class members, the deduction of monies by Labor Ready from their wages on account of or as the result of the fees or deductions from wages occasioned by the use of the so-called "voucher" system or arrangement and the CDM machines, and/or the transportation fees and charges imposed and required by Labor Ready, and/or the charges for the use or mandatory purchase of safety equipment or other equipment, by and from Labor Ready itself, and/or the charges for damage to or destruction of any such safety equipment or other equipment, wholly without regard to whether or not any such destruction of or damage thereto was occasioned by the fault or negligence of the temporary employee, were at all times hereinafter mentioned, and they now are, unlawful and violation of the provisions of the Fair Labor Standards Act.

(59) Upon information and belief, at all times hereinafter mentioned, Murphy and the vast majority of the other Labor Ready temporary employees comprising the instant class herein were, and they now are, paid only the minimum wage provided for by and under the New York Minimum Wage Act, Labor Law § 650 *et seq.*, and/or the Fair Labor Standards Act, 29 U.S.C. § 206.

(60) Upon information and belief, inter alia, the unlawful fees, charges and deductions hereinbefore specified often serve, collectively or otherwise, to bring the wages or compensation paid to the Labor Ready temporary employees embraced within this action substantially under the aforementioned minimum wage standards, rules and/or guidelines hereinbefore referred to.

(61) Upon information and belief, as a result of the hours and time spent by the Labor Ready temporary employees embraced within this action waiting at or around Labor Ready branch offices prior to and/or after the period spent at the actual job site(s) involved, and/or traveling to and from the actual job site(s), and/or the time spent attending required and mandatory training sessions, all of which time said individual employees are never compensated or paid for, collectively or otherwise, serve to bring the number hours that such individuals work at and for Labor Ready to over forty (40) hours per week.

(62) The foregoing practices on the part of the Defendant(s) violate the Fair Labor Standards Act and, more specifically, 29 U.S.C. § 206 and 29 U.S.C. § 207.[3]

(63) Section 531.27 of Title 29 of the Code of Federal Regulations (29 C.F.R. § 531.27), mandates and requires that payment of wages be made by employers to employees "...in cash or negotiable instrument payable at par..."

(64) Upon information and belief, the use of the "voucher" system or arrangement and CDM machines by Defendants, violates the aforementioned Section 531.27, in that the only alternative to the use of such arrangement and machines is acceptance by the temporary employee of a paycheck drawn on an out-of-state or otherwise distant

---

[3] It is well-settled that the federal Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*) is remedial in nature and has a humanitarian purpose and intent, and, as such, it is to be construed liberally or broadly, in favor of the employee in all cases, rather than in a grudging or narrow manner.  So too, the FLSA should in all cases be construed and interpreted so as to strike down all sham and artifice that may be intended to evade its requirements or compliance by employers (*see, e.g., Walling v. Portland Terminal Co.,* 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 [1947]).

-14-

bank, which cannot be cashed by the vast majority of such temporary employees and class members who do not have checking or savings accounts, except at distant locations which invariably charge a fee of at least One ($1.00) Dollar for each check cashed

(65) Labor Ready, in effect, owns and operates its own "company bank," which unlawfully gouges its temporary employees by making substantial illegal daily deductions from the latter's meager wages, in order to greatly enhance and supplement the former's operating revenues and net profitability at the expense of its own people.

(66) Under both state and federal law, all employees, including minimum-wage temporary employees, are justly and properly entitled to be paid their wages in full, un-diminished by such unlawful and unconscionable deductions by employer(s) seeking to wrongfully profit at the direct and substantial expense of their own employees.

## AS AND FOR A SECOND CAUSE OF ACTION UNDER THE PENDENT JURISDICTION OF THIS COURT, PURSUANT TO NEW YORK STATE LABOR LAW

(67) Restates and realleges each and every allegation hereinbefore set forth in ¶ "1" through ¶ "55" inclusive, as though set forth herein in full and with the same force and effect.

(68) Pursuant to New York Labor Law § 193(1), an employer shall not make de-ductions from the wages of an employee, except deductions which:

   a. are made in accordance with the provisions of any law or

   rule or regulation issued by any governmental agency; or

-15-

b. are expressly authorized in writing by the employee and

are for the benefit of the employee; provided that such authoriz-

ation is kept on file on the employer's premises. Such authoriz-

ed deductions shall be limited to payments for insurance premi-

ums, pension or health and welfare benefits, contributions to

charitable organizations, payments for United States bonds, pay-

ments for dues or assessments to a labor organization, and simi-

lar payments for the benefit of the employee.

(69) The fees and deductions by Labor Ready against the wages of its temporary

employees in connection with the latter's use of the voucher system and CDM machines,

as hereinbefore set forth, in order for such latter to obtain their cash wages, and withheld

from employee's wages by Labor Ready, were at all times hereinafter mentioned, and

they now are, unlawful, illegal and directly violative of Labor Law § 193(1).

(70) Such "processing fee" deductions are not made in accordance with the provi-

sions of any law or rule or regulation issued by a governmental agency because Labor

Ready is not required to make these deductions under any federal, state, or local law or

government agency rule or regulation.

(71) Upon information and belief, neither Murphy nor any of the other class mem-

bers herein embraced, similarly situated, have ever provided Labor Ready with any writ-

ten authorization to permit CDM machine deductions from their earnings for any legal or

other purpose or reason.

(72) These unlawful fees and deductions by Labor Ready from the meager wages and earnings of its temporary employees are not for the benefit of such employees, within the meaning of Labor Law § 193(1).  Rather, contrary to Labor Ready's vocal and seemingly endless protestations that the voucher arrangement and use of the CDM machines are solely for the benefit and convenience of its employees, they are solely for Labor Ready's own corporate financial gain and advantage.

### AS AND FOR A THIRD CAUSE OF ACTION UNDER THE PENDENT JURISDICTION OF THIS COURT, PURSUANT TO NEW YORK STATE LABOR LAW

(73) Restates and realleges each and every allegation hereinbefore set forth in ¶ "1" through ¶ "55" inclusive, and ¶ "67" through ¶ "73" inclusive, as though herein set forth in full and with the same force and effect.

(74) New York Labor Law § 193(2) provides that "...[n]o employer shall make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a wage deduction under the provisions of subdivision one of this section."

(75) As hereinbefore set forth, the deductions from wages charged by Labor Ready for use of the voucher system and CDM machines are unlawful, unauthorized and illegal, pursuant to Labor Law § 193(1), hereinbefore excerpted in full in ¶ "68," *supra.*

-17-

(76) Assuming arguendo, but by no means conceding, that the deduction of the voucher/CDM fees and charges by Labor Ready against the wages of its temporary employees was and is a "separate transaction," as contemplated under § 193(2), it is submitted that any and all such payments to Labor Ready by such employees are clearly unlawful and unauthorized in that they clearly and directly violate that statutory provision.[4]

### AS AND FOR A FOURTH CAUSE OF ACTION UNDER THE PENDENT JURISDICTION OF THIS COURT, PURSUANT TO NEW YORK STATE LABOR LAW

(77) Restates and realleges each and every allegation hereinbefore set forth in ¶ "1" through ¶ "55" inclusive.

(78) Under the relevant provisions of the New York Minimum Wage Law, Labor Law § 650 *et seq.*, the minimum wage for all employees in the State of New York, subject to certain well-defined exceptions and qualifications not remotely applicable to

---

[4]     In *Angello, as Commissioner of Labor of the State of New York v. Labor Ready, Inc.*, 22 App.Div.3d 932, 802 N.Y.S.2d 766 (3d Dep't 2005), *leave to appeal granted*, 6 N.Y.3d 714, 2006 N.Y. LEXIS 1328 (May 11, 2006), the Appellate Division of the Supreme Court of the State of New York, Third Judicial Department, entered Judgment, expressly ruling with regard to the voucher system/C.D.M. machines, that "...[t]his direct deduction of a fee for the service of providing cash wages is a violation of Labor Law § 193, even though the deduction is in exchange for a payment option that the employee is not required to take..." (Opinion of Rose, J., *Angello, supra,* 22 App.Div.3d at 933). The Judgment of the Appellate Division in *Angello* annulled a ruling by the New York Industrial Board of Appeals entered on January 27, 2004, which revoked the Amended Order to Comply with New York Labor Law § 193, issued by the Commissioner of the New York State Department of Labor, entered on August 2, 2002 (Docket No. PR-02-072).
        Upon information and belief, no motion for a Stay of Enforcement, pursuant to CPLR § 5519, has been made by or on behalf of Labor Ready, in either the Court of Appeals or the Appellate Division.

-18-

the case at bar, is $6.75 per hour.

(79) Murphy, and, upon information and belief, all other class members as parties plaintiff in this action, were, at all times hereinafter mentioned, and they now are paid only the minimum wage - to wit, $6.75 per hour.

(80) This being the case, the unlawful deduction by Labor Ready of the fees, charges, payments, etc., hereinbefore spelled out, from the wages of its temporary employees, clearly brings the wages and compensation paid to Murphy and the other members of the enumerated class herein substantially below the $6.75-per-hour minimum wage in this State.

## PROVISIONS OF THE FAIR LABOR STANDARDS ACT PERTAINING TO THE FIRST CAUSE OF ACTION HEREINBEFORE SET FORTH

(81) Section 216(b) of the Fair Labor Standards Act (29 U.S.C. § 216[b]) provides in pertinent part as follows:

Any employer who violates the provisions of section 206 or section 207 of this Title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages....An action to recover the liability prescribed in either of the preceding sentences may be maintained in against any employer (including

-19-

a public agency) in any Federal or state court of competent juris-

diction by any one or more employees for and in behalf of him-

self or themselves and other employees similarly situated....The

court in such action shall, in addition to any judgment awarded

to the plaintiff or plaintiffs, allow a reasonable attorney's fee to

be paid by the defendant and the costs of the action.

## PROVISIONS OF THE NEW YORK LABOR LAW PERTAINING TO THE SECOND, THIRD AND FOURTH CAUSES OF ACTION HEREINBEFORE SET FORTH

(81) New York Labor Law § 198 provides that in relevant part that:

1. In any action instituted on a wage claim by an employee

or the commissioner in which the employee prevails, the court

may allow such employee in addition to ordinary costs, a reason-

able sum, not exceeding fifty dollars for expenses which may be

taxed as costs.

1-a.  In any action instituted on a wage claim by an employee

or the commissioner in which the employee prevails, the court

shall allow such employee reasonable attorney's fees and, upon

a finding that the employer's failure to pay the wage required by

this article was willful, an additional amount as liquidated dama-

ges equal to twenty-five percent of the total amount of wages

-20-

found to be due.

    2.  The remedies provided by this article may be enforced simultaneously or consecutively so far as not inconsistent with each other.

    3.  Notwithstanding any other provision of law, an action to recover upon a liability imposed by this article must be commenced within six years.  All employees shall have the right to recover full wages, benefits and wage supplements accrued during the six years previous to the commencing of such action, whether the action is instituted by the employee or by the commissioner.

(82) New York Labor Law § 663 provides in pertinent part that:

    1. By employee.  If an employee is paid by his employer less than the wage to which he is entitled to under the provisions of this article, he may recover in a civil action the amount of such underpayments, together with the costs and such reasonable attorney's fees as he may be allowed by the court, and if such underpayment was willful, an additional amount as liquidated damages equal to twenty-five percent of the total of such underpayments found to be due to him

and any agreement between him and the employer to work

for less than such wage shall be no defense to the action.

••••••

    3. Limitation of time.  Notwithstanding any other provi-

sion of law, an action to recover upon a liability imposed by

this article must be commenced within six years.

## SPECIAL ALLEGATION AS TO WILLFULNESS OF LABOR READY DEFENDANTS IN ACTIONS AND/OR REFUSALS TO ACT IN THE PREMISES

(83) Upon information and belief, as to any and all substantive allegations as

to the actions, omissions or refusals to act, etc., by or on the part of any and all of the

Labor Ready Defendants herein named, with regard to all substantive matters specified

in or pertaining to the First, Second, Third and Fourth Causes of Action hereinbefore

stated and set forth, as well as any and all substantive matters elsewhere herein set forth

hereinbefore or hereinafter, such actions and/or omissions or refusals to act on the part

of said Defendants were at all times herein mentioned, and they now are, utterly and en-

tirely wilful, deliberate, calculated, intentional and malicious.

## CLASS ACTION ALLEGATIONS

(84) Plaintiff brings this class action, pursuant to Rule 23 of the Federal Rules of

Civil Procedure, in his representative capacity on behalf of himself and on behalf of his

class members similarly situated.

(85) The class herein may be defined, specified and limited more or less as follows:

> [a] all individuals presently working for Labor Ready at any
>
> Labor Ready branch in the State of New York, as well as all in-
>
> dividuals who have worked in the past for Labor Ready at any
>
> Labor Branch in the State of New York at any time over the six-
>
> year period corresponding to the limitations period set forth in
>
> Labor Law § 198(3) and § 663(3), from whose wages unlawful
>
> deductions were made or taken by Labor Ready; and

> [b] all individuals presently working for Labor Ready at any
>
> Labor Ready branch in the State of New York, as well as any in-
>
> dividuals who have worked at such Labor Ready Branch over the
>
> six-year period of limitations set forth in Labor Law § 198(3) and
>
> § 663(3), who are entitled by law to recover from Labor Ready any
>
> and all monies by reason of the fact that they were not paid for peri-
>
> ods of time spent waiting at any Labor Ready branch, for the time
>
> spent traveling to and from the job site, for time spent at Labor Rea-
>
> dy mandated training sessions, and for any other periods of time dur-
>
> ing which such individuals were or are lawfully entitled to be paid
>
> for by Labor Ready; and

-23-

[c] all individuals presently working for Labor Ready at any Labor Ready branch in the State of New York, or who have worked at any such branch over the six-year period of limitations set forth in Labor Law § 193(3) and § 663(3), who have had monies unlawfully deducted from their wages or have been required by Labor Ready to pay unlawful charges, fees or penalties; and

[d] all individuals presently working for Labor Ready at any Labor Ready branch in the State of New York, or who have worked at any such branch over the six-year period of limitations set forth in Labor aw § 198(3) and § 663(3), who have not been paid overtime wages by Labor Ready notwithstanding the fact that Labor Ready was and is, by law, required to pay such overtime wages; and

[e] all individuals presently working for Labor Ready at any Labor Ready branch in the State of New York at the present time or at any time over the six-year period hereinabove referred to who are entitled to relief under 29 U.S.C. § 206 or § 207.

(86) Plaintiff meets the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure to bring this class action on behalf of himself and on behalf of his fellow class members because:

[a] **Numerosity**: upon information and belief, the class consists of at least twenty thousand (20,000) members, inasmuch as this action covers

all twenty-six (26) Labor Ready branches in the State of New York and also includes all individuals who have worked as temporary workers at Labor Ready in the State of New York, not just presently, but at any time over the last six (6) years; thus, joinder of all members of the class as individual Plaintiffs is impracticable;

[b] **Commonality**: there are here questions of law and fact which are common to all class members, which clearly predominate over any questions of either law or fact peculiar to any individual class members; indeed, the operative or controlling facts or circumstances are identical and recurring - especially as to the use of the voucher system and CDM's and the unlawful deductions of monies from their wages by Labor Ready by virtue of their use of such system and such machines;

[c] **Typicality**: Plaintiff's claims are typical of the class and identical with the vast majority of claims of any and all class members; to a considered degree, the claims of all class members are based upon the same facts and the same legal theories;

[d] **Adequacy of Representation by Plaintiff**: Plaintiff will fairly, adequately and competently represent the class; his interests and claim is not merely *de minimis* and he would benefit substantially if the relief herein requested is granted to him along with his fellow class members; Plaintiff has enough of a stake in this matter that he will vigorously litigate and pursue

-25-

this action on behalf of himself and his fellow class members; the interests

of the Plaintiff, as proposed class representative, are neither antagonistic to,

nor do they conflict in any way with those of any or all of his fellow class

members;

[e] **Superiority of Class Action Approach**: unquestionably, this is a mat-

ter  uniquely suited to class action handling and which requires such class ac-

tion approach; for at least the following reasons, to wit: as a class, the tempo-

rary employees of Labor Ready are largely poor, unsophisticated and not the

sort of individuals who understands the legal system or who would be able

to competently and successfully prosecute individual lawsuits against Labor

Ready to recover monies lawfully owed to them by Labor Ready; the sums

of money involved here are relatively small - perhaps averaging between

$25.00 and $50.00, although Plaintiff can only speculate about this pending

pre-certification discovery of such information and facts from Labor Ready;

 Labor Ready is guilty of serious and unlawful misconduct and bad faith at

the direct expense of its temporary employees; the only practical or viable

way to deter Labor Ready from continuing these unlawful actions and to

cause them to disgorge their unlawful financial gains is by way of a class

action such as this; in the absence of a class action, it is highly unlikely that

 the claims of the class members against Labor Ready, or the overwhelming

majority of them anyway, would ever be pursued or vindicated, thus preclu-

ding such class members from recovering monies unlawfully taken or with-

held from them by Labor Ready.

### **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, on behalf of himself and the proposed class of

Plaintiffs hereinbefore discussed, respectfully requests Judgment as follows:

[a] class certification, pursuant to Fed.R.Civ.Pr., Rule 23(c) of the pro-

posed or putative class hereinbefore specified, upon timely motion for such relief, pur-

suant to Rule 23(c);

[b] a pre-certification payroll audit of Labor Ready's books and records

to determine the amounts lawfully due to the class members over the six-year time frame

hereinabove specified;

[c] actual compensatory damages for, and recovery of, any and all deduc-

tions, deductions, charges, payments, failures and/or refusals to pay, withholding of, etc.,

of any and all monies lawfully due to the Plaintiff and all class members by the Defen-

dants, or any or all of said Defendants, pursuant to the First, Second, Third and Fourth

Causes of Action stated in this Complaint;

[d] the statutory penalties or liquidated damages authorized and provided

for by and under 29 U.S.C. § 216(b), Labor Law § 198(1), § 198(1-a) and § 663(1), or as

otherwise authorized, provided for or mandated by or under state or federal law;

[e] prejudgment interest, pursuant to CPLR § 5001(a), (b), at the statutory

rate Nine (9%) Percent per annum, as set forth in CPLR § 5004;

[f] preliminary and permanent injunctions barring, prohibiting and enjoin-

ing Labor Ready from making any further or future illegal wage deductions or failing or

refusing to pay its temporary employees monies that are owed to them, whether for un-

paid overtime wages or for any other reason; or from any unlawful practices or policies,

as hereinbefore discussed;

[g] the costs and disbursements of this action, together with reasonable

attorney's fees incurred by or on behalf of the members of the class herein; and

[h] such additional and further relief as may be equitable and proper to

this Court.

Date: September 11, 2006

Signed,

_____

Christopher M. Murphy
Plaintiff, appearing *pro se*
Residence and Post Office Address:
757 Linden Place
Elmira, New York 14901
Telephone: (607) 731-4856